**ORDERED** that the ITA's determination on remand is affirmed in all other respects; and it is further

**ORDERED** that the second remand results are due within thirty (30) days of the date this opinion is entered, comments or responses by the parties are due within fifteen (15) days thereafter and any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

The TORRINGTON COMPANY, Plaintiff,

Federal–Mogul Corporation, Plaintiff–Intervenor,

v.

UNITED STATES, Defendant,

SKF USA Inc. and SKF Industrie, S.p.A.; FAG Cuscinetti SpA, Defendant–Intervenors.

Court No. 91–08–00568. Slip Op. No. 94–37.

United States Court of International Trade.

March 4, 1994.

Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Geert De Prest, Margaret E.O. Edozien, William A. Fennell, Wesley K. Caine, Myron A. Brilliant, Robert A. Weaver, Patrick J. McDonough and Amy S. Dwyer), Washington, DC, for plaintiff.

Frederick L. Ikenson, P.C. (Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel), Washington, DC, for plaintiff-intervenor Federal–Mogul Corp.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Velta A. Melnbrencis and Jane E. Meehan); of counsel: John D. McInerney, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert, Stephen J. Claeys, D. Michael Kaye and Douglas S. Cohen, Atty.–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Howrey & Simon (Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Thomas J. Trendl and Juliana M. Cofrancesco), Washington, DC, for defendant-intervenors SKF USA Inc. and SKF Industrie, S.p.A.

Grunfeld, Desiderio, Lebowitz & Silverman (Max F. Schutzman, David L. Simon, Andrew B. Schroth, Matthew L. Pascocello and Jeffrey S. Grimson), New York City, for defendant-intervenor FAG Cuscinetti SpA.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), moves pursuant to Rules 1 and 7 of the Rules of this Court for modification of this Court's decision in *Torrington Co. v. United States,* 17 CIT ——, 832 F.Supp. 365 (1993), asking this Court to remand this case to the Department of Commerce, International Trade Administration ("ITA"), to recalculate all antidumping duty margins without allowing a deduction for pre-sale inland freight in the calculation of foreign market value ("FMV") pursuant to the United States Court of Appeals for the Federal Circuit's decision in *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States,* 13 F.3d 398 (Fed.Cir.1994). *Motion of The Torrington Company to Modify Judgment and Issue a Second Remand Order ("Torrington's Motion").*

In addition, the ITA has filed its Final Results of Redetermination Pursuant to Court Remand, *The Torrington Company v. United States,* 850 F.Supp. 1 (1993) ("*Remand Results*"), regarding the ITA's treatment of value added taxes ("VAT") and FAG Cuscinetti SpA's U.S. market discounts.

### Background

In *Torrington,* 17 CIT at ——, 832 F.Supp. at 374, this Court stated that:

The reasoning of this Court in upholding the ITA's treatment of pre-sale inventory carrying costs in this case is equally applicable to the ITA's treatment of pre-sale movement expenses. The ITA's decision to compare U.S. price to home market price at a contemporaneous point in the chain of commerce is reasonable. *Torrington Co. [v. U.S.],* 17 CIT at [——], 818 F.Supp. [1563] at 1576 [ (1993) ]. In this case, the ITA has chosen an ex-factory price as the contemporaneous point in the chain of commerce. In order to make this comparison certain expenses need to be removed from both U.S. and home market prices. This Court finds nothing unrea-

sonable in the ITA's removal of pre-sale movement expenses from both U.S. and home market prices as measured from the same point in the chain of commerce, in this case ex-factory. *Id.* at 33–34; *Ad Hoc Comm. [v. U.S.],* 16 CIT at [——], 787 F.Supp. [208] at 211–13 [(1992)]. This method of treating pre-sale home market movement expenses has also been specifically upheld by this court in a well reasoned opinion in *Nihon Cement Co. v. United States,* 17 CIT ——, [——], Slip Op. 93–80 at 30–34, 1993 WL 185208 (May 25, 1993).

Therefore, this Court affirms the ITA's deduction of FAG's pre-sale movement expenses from FMV.

In *Torrington Co. v. United States,* 17 CIT ——, ——, 850 F.Supp. 1, 6–7 (1993), this Court

enter[ed] final judgment on [the VAT] issue ordering the ITA to apply Italy's VAT rate to USP [U.S. price] calculated at the same point in the stream of commerce as where Italy's VAT is applied for home market sales and add the resulting amount to USP. This case is remanded to the ITA to apply its current administrative practice and choose appropriate BIA for the adjustment to FAG's USP for U.S. market discounts and to treat the adjustment as a direct selling expense.

## *Discussion*

### 1. *Motion to Modify Judgment*

The Federal Circuit in *Ad Hoc Comm.* stated:

In the circumstances of this case, we believe that had Congress intended to deduct home-market transportation costs from FMV, it would have made that intent clear. FMV and USP are intimately related concepts, given full meaning only by

their relationship to one another. The Antidumping Act revolves around the difference between the two. *See* 19 C.F.R. § 353.2(f)(1) (1993) (defining dumping margin with reference to USP and FMV). In slightly different forms, the USP provision, 19 U.S.C. § 1677a, and the FMV provision, 19 U.S.C. § 1677b, were passed together as part of the original Antidumping Act, 1921, ch. 14, 42 Stat. 11 (1921). From the Act's beginning, therefore, it is likely Congress has considered one only with reference to the other and has been well aware of any differences between them. That Congress included a deduction for transportation costs from USP but not from FMV leads us to conclude that Congress did not intend pre-sale home-market transportation costs to be deducted from FMV.

*Ad Hoc Comm.,* 13 F.3d at 401–402 (footnote omitted).

Torrington argues that the Federal Circuit's decision in *Ad Hoc Comm.* "held that the Department of Commerce lacks authority under the circumstance-of-sale provision (19 U.S.C. § 1677b(a)(4)) to adjust foreign market value for pre-sale inland freight expense." *Torrington's Motion* at 1–2. Therefore, Torrington argues that this Court's decision affirming the ITA's grant of an adjustment to FMV for pre-sale inland freight was in error and this Court should modify its decision on this issue and remand this case back to the ITA ordering the ITA to recalculate all antidumping duty margins without allowing a deduction for pre-sale inland freight in the calculation of FMV. *Id.* at 2.

Defendant opposes Torrington's motion. Specifically, defendant argues that the Federal Circuit's decision in *Ad Hoc Comm.* only applies to adjustments to FMV for pre-sale inland freight in situations where FMV has been calculated based upon purchase price.[1]

---

**1.** Purchase price and exporter's sales price ("ESP") are the two types of United States price. USP, purchase price and ESP are defined at 19 U.S.C. § 1677a (1988):

(a) **United States price**
[T]he term "United States price" means the purchase price, or the exporter's sales price, of the merchandise, whichever is appropriate.
(b) **Purchase price**

"[P]urchase price" means the price at which merchandise is purchased, or agreed to be purchased, prior to the date of importation, from a reseller or the manufacturer or producer of the merchandise for exportation to the United States.
(c) **Exporter's sales price**
"[E]xporter's sales price" means the price at which merchandise is sold or agreed to be sold in the United States, before or after the time of

Defendant points out that the Federal Circuit explicitly limited its decision on this issue to the calculation of FMV based upon purchase price and not when exporter's sales price ("ESP") is used to calculate FMV. *Defendant's Opposition to Plaintiff's Motion to Modify Judgment and Issue a Second Remand Order ("Defendant's Opposition")* at 2.

Defendant and defendant-intervenors SKF USA Inc. and SKF Industrie, S.p.A. ("SKF") also argue that the Federal Circuit's decision on this issue was based on the ITA's stated rationale for its decision, *i.e.*, the ITA's inherent authority to fill gaps in the statutory framework to achieve the purposes of the statute, and not on the circumstance of sale provision found at 19 U.S.C. § 1677b(a)(4)(B) (1988). *Defendant's Opposition* at 2; *Defendant–Intervenor's Response to Plaintiff's Motion to Modify Judgment and Issue a Second Remand Order ("SKF's Response")* at 2–3.

Defendant and SKF point out that Torrington challenged only the ITA's treatment of FAG Cuscinetti SpA's ("FAG") pre-sale inland freight expenses. Therefore, defendant and SKF argue that Torrington cannot now request this Court to order the recalculation of all the other parties dumping margins. *Defendant's Opposition* at 2; *SKF's Response* at 2.

Finally, defendant argues that the ITA has not had an opportunity to consider its position on this issue in light of the Federal Circuit's decision in *Ad Hoc Comm.* Defendant requests this Court to remand this issue to the ITA so it can "consider the appellate decision and its impact upon this case and whether other alternatives exist for treatment of pre-sale inland freight expenses." *Defendant's Opposition* at 2.

This Court finds that Torrington's characterization of the Federal Circuit's decision in *Ad Hoc Comm.* is incorrect on certain points. First, the *Ad Hoc Comm.* court specifically

noted that it was not ruling on whether the ITA has authority to adjust FMV for pre-sale inland freight pursuant to the circumstance of sale provision at 19 U.S.C. § 1677b(a)(4)(B). *Ad Hoc Comm.*, 13 F.3d at 400 n. 8. Second, the *Ad Hoc Comm.* court limited its decision to the calculation of FMV in purchase price situations only. *Id.* at 400. Therefore, this Court finds that there is no basis for remanding this case to the ITA in regard to situations where FMV was calculated based upon ESP.

■ It is a cardinal rule of administrative law that an agency should be allowed to decide an issue for itself before a court addresses that issue. *McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). This Court agrees with the ITA that it should be given the opportunity to address this issue first in light of the Federal Circuit's decision in *Ad Hoc Comm.*

Therefore, this case is remanded to the ITA to allow the ITA to determine whether it has statutory authority to adjust FMV, calculated using purchase price, for only FAG's pre-sale inland freight in light of *Ad Hoc Comm.*, 13 F.3d 398.

## 2. Remand Results

The ITA's Remand Results deserve to be quoted at length:

[W]e have applied our current administrative practice to the U.S. discounts in question. Our current administrative practice is to,

deduct[ ] all U.S. discounts, rebates, or price adjustments if actual amounts were reported on a transaction-specific basis. If these expenses were not reported on a transaction-specific basis, we used BIA for the adjustment and treated the adjustment as a direct deduction from USP.

*Final Results of Antidumping Duty Administrative Reviews and Revocation in Part of an Antidumping Duty Order: Antifriction Bearings (Other Than Tapered*

importation, by or for the account of the exporter. . . .
The purchase price is normally used as USP where the transaction prior to importation is between unrelated parties, or at arm's length. The exporter's sales price will be used as the

USP when the U.S. importer and the foreign seller are "related parties." *See* 19 U.S.C. § 1677(13) (1988). The exporter's sales price will be the price at which the merchandise is first sold to an unrelated purchaser in the United States. 19 U.S.C. § 1677a(c).

*Roller Bearings) and Parts Thereof from France et al.,* 58 Fed.Reg. 39,729, 39,759 (1993). The U.S. discounts in question were not reported on a transaction-specific basis, and, as such, the Department had to determine a BIA methodology for the discounts, and to treat this adjustment as a direct expense. The Department has determined that BIA is the highest discount rate reported for any U.S. sale, this rate to be applied to all U.S. sales for which a discount was granted.

The Court decision also includes a final order ordering the Department to apply Italy's value added tax ("VAT") rate to the United States price calculated at the same point in the stream of commerce as that at which Italy's VAT is applied for home market sales, and to add the resulting amount to USP. In order to determine the actual BIA amounts for the U.S. discounts, the Department must know what the VAT adjustments will be. However, the order concerning VAT is not yet conclusive, *i.e.,* it is still appealable, and therefore the Department will determine the actual BIA amounts for the U.S. discounts when a conclusive determination on the VAT adjustment has been made. *See, Timken Co. v. United States,* 893 F.2d 337 (Fed.Cir. 1990). In *Timken,* the Court of Appeals for the Federal Circuit (CAFC) distinguished between a "final decision," *i.e.,* a decision which can be appealed, and a "conclusive decision," *i.e.,* a decision which can no longer be appealed. The Department is not required to implement a final decision until it becomes conclusive. Thus, the Department's action here is in accordance with the CAFC's ruling in *Timken.* *Remand Results* at 2–3.

This Court does not agree with the ITA's interpretation of *Timken.* The Federal Circuit's decision in *Timken* dealt solely with the issue of when the ITA is required to publish a notice in the Federal Register of an adverse court decision pursuant to 19 U.S.C. § 1516a(e) (1988). The court found that the ITA is required to publish notice even if the

decision may be, or is, appealed to the Federal Circuit. The Federal Circuit found that an appealable decision of this court "is not the *final* court decision *in the action.* In this context, the word 'final' is used as it is used in 28 U.S.C. § 2645(c), i.e., to mean 'conclusive.'" *Timken,* 893 F.2d at 339 (emphasis in original).

While the Federal Circuit found that the ITA was not required to order liquidation pursuant to 19 U.S.C. § 1516a(e) when a decision of the Court of International Trade is not "conclusive," the ITA is nevertheless required to publish notice of the adverse decision and suspend liquidation of the subject merchandise until there is a "conclusive" court decision which will govern liquidation. *Timken,* 893 F.2d at 339–42.

In this case, this Court entered partial final judgment on the VAT issue *ordering* the ITA to treat VATs in a certain way. This partial final judgment is not "conclusive" within the meaning of *Timken.* However, that fact does not justify the ITA's refusal to implement this Court's order. Recalculation of the VAT in this case will not in any way change the position of the parties and has no effect on any appeal of the partial final judgment to the Federal Circuit.

This Court finds that this situation is more analogous to whether the ITA is required to publish notice of an adverse court decision rather than if the ITA is to liquidate entries in accordance with a decision that is not "conclusive." The Court has merely ordered the ITA to recalculate dumping margins using a new VAT methodology. This Court has not ordered the ITA to publish those new margins or order liquidations at the new margin rate.

At the time the ITA was required to file its Remand Results in this case no party had appealed the VAT issue to the Federal Circuit.[2] Indeed, it is clear from the Remand Results that the ITA itself is not appealing this Court's order. This Court finds that the ITA had no grounds for not implementing this Court's partial final judgment ordering

**2.** SKF filed notice of appeal of this Court's partial final judgment on the VAT issue. Notice of

Appeal, Court No. 91–08–00568 (Feb. 8, 1994).

the ITA to "apply Italy's VAT rate to USP calculated at the same point in the stream of commerce as where Italy's VAT is applied for home market sales and add the resulting amount to USP." *Torrington*, 17 CIT at ——, 850 F.Supp. at 6–7.

As to the treatment upon remand of U.S. discounts, the ITA seems to acquiesce in the Court's remand instructions but has not performed the required calculations due to its views on implementing the new VAT methodology. *Remand Results* at 2. Since this Court finds that the ITA is required to implement the new VAT methodology, ITA shall proceed with the calculation of U.S. discounts.

*Conclusion*

Therefore, this Court remands this case to the ITA. The ITA is ordered to implement its new VAT methodology, to recalculate the VAT in this case pursuant to the partial final judgment on this issue previously entered in this case, and to use the newly calculated VAT to determine BIA for U.S. discounts. In addition, the ITA will determine whether it has statutory authority to adjust FMV, calculated using purchase price, for only FAG's pre-sale inland freight in light of *Ad Hoc Comm.*, 13 F.3d 398. Remand results are to be filed with this Court within sixty (60) days. Comments or responses by the parties are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

**ORDER**

This action having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that plaintiff's motion is granted in part; and it is further

**ORDERED** that this case is remanded to the Department of Commerce, International Trade Administration ("ITA"), to implement its new value added tax ("VAT") methodology, to recalculate the VAT in this case pursuant to the partial final judgment on this issue previously entered in this case, and to use

the newly calculated VAT to determine best information available for U.S. discounts. In addition, the ITA will determine whether it has statutory authority to adjust foreign market value, calculated using purchase price for only FAG's pre-sale inland freight in light of *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States*, 13 F.3d 398 (Fed.Cir.1994); and it is further

**ORDERED** that remand results are to be filed with this Court within sixty (60) days of the date this order is entered. Comments or responses by the parties are due within thirty (30) days thereafter. Rebuttal comments are due within fifteen (15) days of the date responses or comments are due.